**APPEAL NUMBER: 22-10057**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**TERESA PHILLIPS,**

    **Plaintiff-Appellant,**

**v.**

**LEGACY CABINET,**

    **Defendant-Appellee.**

---

**ON APPEAL FROM THE UNITED STATES**
**DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA**

---

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

**Jon C. Goldfarb**
**L. William Smith**
Wiggins, Childs, Pantazis, Fisher,
& Goldfarb, LLC
The Kress Building
301 North 19th Street
Birmingham, Alabama 35203
(205) 314-0500
**Attorneys for Plaintiff-Appellant**

## <u>Certificate of Interested Persons</u>

The Plaintiff-Appellant, Teresa Phillips, hereby submits this Certificate of Interested Persons.

1.    Carmen-Burks, Lieselotte, Attorney for Plaintiff-Appellant;

2.    Goldfarb, Jon C., Attorney for Plaintiff-Appellant;

3.    Hand Arendall Harrison Sale LLC., Counsel for Defendant-Appellee;

4.    Hart, Christine Harding, Attorney for Defendant-Appellee;

5.    Malmat, Christina M., Attorney for Plaintiff-Appellant;

6.    Phillips, Teresa, Plaintiff-Appellant;

7.    Smith, L. William, Attorney for Plaintiff-Appellant;

8.    Waggoner, Mark T., Attorney for Defendant-Appellee;

9.    Wiggins, Childs, Pantazis, Fisher, & Goldfarb, LLC., Counsel for Plaintiff-Appellant.

## **Certificate of Type Size and Style**

Pursuant to Eleventh Circuit Rule 28.1 (d) the following is the type size and styled used in this brief: Times New Roman 14 pt.

## **Table of Contents**

Certificate of Interested Persons…………………………………...………………2

Certificate of Type Size and Style……………………………………………….....3

Table of Contents…………………………………………………………………..4

Table of Authorities………………………………………….…………………...5

Table of Record References in the Brief………………………………………...8

A.    The Trial Court Correctly Determined that Plaintiff Established a Prima
        Facie Case of Discrimination……………………………………………..9

B.    The Factual Dispute Between Plaintiff and O'Neal Regarding Plaintiff's
        Conduct Prior to Her Termination Gives Rise to Pretext……………..…11

C.    Comparator Evidence is Evidence of Discriminatory Intent………………14

D.    That Plaintiff Included Age Discrimination on Her EEOC Charge is
        Irrelevant to Disposition of her Race Discrimination Claim……..………...17

E.    Plaintiff Does Not Rely Solely on Her Prima Facia Case, and *Flowers*,
        Where the Plaintiff Had No Admissible Comparator Evidence, is Not
        Controlling…………….……………………………………………………...21

F.    The Trial Court Erred in Granting Summary Judgment on Plaintiff's "Mixed
        Motive" Theory of Relief…………………………………………………..27

Conclusion…………………………………………………….………………...32

Certificate of Compliance…………………………………………………………33

Certificate of Service…………………………………………………………34

# Table of Authorities

**Pages:**

*Allen v. Bd. Of Pub. Educ.,*
　　495 F.3d 1306, 1315 (11th Cir. 2007)……………………………….…11-12

*Bostock v. Clayton County,*
　　140 S. Ct. at 1739, 1740, 1744………………………………………….18-20

*Burnette v. Taylor,*
　　533 F.3d 1325, 1330 (11th Cir. 2008)………………………………….....30

*Cf. Stevenson v. City of Sunrise,*
　　No. 20-12530, 2021 U.S. App. LEXIS 30858, at *19 (11th Cir.
　　Oct. 15, 2021)…………………………………………………………….....30

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,*
　　140 S. Ct. 1009, 1014, 1019 (2020)………………………………………18-20

*Evans v. Stephens,*
　　407 F.3d 1272, 1278 (11th Cir. 2005)………………………………….....31

*Flowers v. Troup Cty.,*
　　803 F.3d 1327, 1338, 1339, 1340 (11th Cir. 2015)……………...22-23, 26-27
　　1 F. Supp. 3d 1363, 1371, 1382 fn8 (N.D. Ga. 2014)…………..21-22, 26-27

*Gross v. FBL Financial Services, Inc.,*
　　557 U. S. 167, 176-177 (2009)………………………………………………19-20

*Jackson v. City of Killeen,*
　　654 F.2d 1181, 1186 (5th Cir. 1981)……………………………………….24

*Jenkins v. Nell,*
　　No. 20-13869, 2022 U.S. App. LEXIS 5752, at *14 (11th Cir.
　　Mar. 3, 2022)……………………………………………………………….16

*Lambert v. Herrington,*
　　No. 1:19-00854-KD-B, 2021 U.S. Dist. LEXIS 29778, at *33 (S.D. Ala. Jan.
　　22, 2021)……………………………………………………………….....12

*Lee v. Safe-Dry Carpet & Upholstery,*
No. 20-14275, 2021 U.S. App. LEXIS 25957, at *11-14 (11th Cir.
Aug. 27, 2021)……………...…………………………………….....22, 27
No. 2:19-cv-00661-ACA, 2020 U.S. Dist. LEXIS 189837, at *7
(N.D. Ala. Oct. 14, 2020)…………………………………..……………26

*Lewis v. City of Union City,*
918 F.3d 1213, 1222, 1233 (11th Cir. 2019)…………………………...14, 26
934 F.3d 1169, 1187 (11th Cir. 2019)………………………………...16

*McDonnell Douglas Corp. v. Green*………………………………...…….…29

*Muniz v. Dynamic Sys.,*
No. CV 117-074, 2019 WL 4439816 (S. D. Ga. 2019)……………………24

*Quigg v. Thomas Cnty. Sch. Dist,*
814 F.3d 1227, 1235 (11th Cir. 2016)………………………………...27

*Siddiqui v. NetJets Aviation, Inc.,* 773 F.
App'x 562, 565 (11th Cir. 2019)…………………………………..25-26

*Silvera v. Orange Cty. Sch. Bd.,*
244 F.3d 1253, 1263 n5 (11th Cir. 2001)………………………………..26

*Smith v. Lockheed-Martin Corp.,*
644 F.3d 1321, 1343 (11th Cir. 2011)………………………………...…31

*Smith v. Vestavia Hills Bd. Of Educ.,*
791 Fed. Appx. 127, 130, 131 (11th Cir. 2019)……………………………28

*University of Tex. Southwestern Medical Center v. Nassar,*
570 U. S. 338, 347 (2013)……………………………………………….19

*Willis v. Koch Agronomic Servcs.,*
846 Fed. Appx. 787, 797, n.11, 798 (11th Cir. 2021)…………………..24-25

## **STATUTES AND OTHER:**

42 USC §1981…………………………………………………………...….17-20

42 U.S.C. § 2000e—2(m)…………………………………………………...….27

Fed. R. Civ. P. 8(d)………………………………………………….…17-18

Title VII……………………………………………………………...…..18, 30

## Table of Record References in the Brief

| Brief Page No. | Filing | Docket No. |
|---|---|---|
| 12-13, 15, 28-30 | Defendant's Evidentiary Submission, Exhibit 1, Deposition of Plaintiff Teresa Phillips and Exhibits | 15-1 |
| 28 | Defendant's Evidentiary Submission, Exhibit 3, Deposition of Shane Hanna and Exhibits | 15-3 |
| 10 | Plaintiff's Evidentiary Submission, Exhibit 1, Legacy 0242-0243 | 17-1 |
| 10, 12-13, 27 | Plaintiff's Evidentiary Submission, Exhibit 2, Declaration of Theresa Phillips | 17-2 |
| 9-10, 14, 16, 21, 27 | Memorandum Opinion | 29 |

## A. **The Trial Court Correctly Determined that Plaintiff Established a Prima Facie Case of Discrimination.**

Defendant's brief fails to address the trial court's alternate basis for finding that Plaintiff had established a prima facie case. As Plaintiff's opening brief pointed out, the trial court correctly found Plaintiff "sufficiently established that she was replaced by a non-white employee." (Doc. 29 at 10 fn2).

As to Plaintiff's comparator evidence, Defendant urges the Court to disregard the trial court's determination that Plaintiff "was similarly situated to Stockdale and Tink during the Saturday group meeting or to other minority employees that O'Neal called to his office but did not fire." (Doc. 29 at 8). However, the only way Defendant can distinguish Plaintiff's comparators and justify summary judgment is by persuading the Court to disregard Plaintiff's testimony. This is emphasized by the statement on page 24 of Defendant's brief that "the District Court should not have endorsed Phillips's general denials that she was disrespectful, irate, insubordinate, that she did not interrupt O'Neal, and that she did not comment that O'Neal was stupid." (Def.'s Brief at 24). Indeed, under Plaintiff's version of the facts, O'Neal fired her simply for speaking up in the meeting. This is in accordance with the trial court's observation that "O'Neal fired Phillips unprovoked, not because Phillips called O'Neal stupid or questioned his management decisions." (Doc. 29 at 12). But Craig and Stockdale also spoke up in the meeting, and they did so in a far more disrespectful manner than Plaintiff did. They were loud and "cussing," using words

9

such as "hell and damn and the 'f' word." (Doc. 17-1, 82:19-83:7). And yet O'Neal did not suspend them on the spot, did not summon them to his office, and did not terminate their employment. The trial court correctly concluded that a reasonable jury could find that Plaintiff was "similarly situated in all material respects" to either of these two individuals, neither of whom was fired. (Doc. 29 at 10-12).

Defendant attempts to distinguish Stockdale and Craig from Plaintiff by urging that "neither of them continued to interrupt O'Neal as he was speaking to the group" and that "[n]either Craig nor Stockdale made such disrespectful comments, and neither of them continued to do so in the same manner as Phillips, who continued to insult O'Neal despite several admonitions not to." (Def's Brief at 39). But Plaintiff denies engaging in such behavior. As set forth in Paragraph 3 of her declaration, Plaintiff "did not interrupt O'Neal and … did not keep interrupting him," "did not <u>not</u> let him finish," "did not refuse to be quiet," and was not "insubordinate or disrespectful in this meeting." (Doc. 17-2 at 2). Nor may Defendant succeed by arguing that O'Neal took Plaintiff to the office but did not similarly summon Craig or Stockdale, as this is precisely the point: O'Neal gave Craig and Stockdale no discipline whatsoever and did not even summon them to his office to discuss their disrespectful behavior. Accordingly, this is only a distinction insofar as it confirms that O'Neal treated Plaintiff more severely than he treated O'Neal and Stockdale.

The authority on which Defendant relies in inviting the Court to disregard the summary judgment standard may be found in a footnote to its statement of facts, where Defendant posits that "Phillip's declaration testimony that she was not disrespectful and did not interrupt O'Neal is no more than her personal opinion…" (Def.'s Brief at 12). The Court should refuse Defendant's invitation to recast Plaintiff's factual testimony as merely her "opinion" for the purpose of disregarding it, as whether or not someone interrupted someone else is a matter of fact, and Plaintiff's testimony disputes nearly every material fact set forth by O'Neal purporting to justify her termination, as discussed in greater detail in Section B of this brief. With the facts properly viewed in the light most favorable to the plaintiff, the trial court was correct in holding that Plaintiff had established a prima facie case.

## B. <u>The Factual Dispute Between Plaintiff and O'Neal Regarding Plaintiff's Conduct Prior to Her Termination Gives Rise to Pretext</u>.

Defendant's arguments regarding pretext are identical with its attempt to distinguish Stockdale and Craig as comparators, with Defendant again urging that "the District Court should not have endorsed Phillips's general denials that she was disrespectful, irate, insubordinate, that she did not interrupt O'Neal, and that she did not comment that O'Neal was stupid." (Def.'s Brief at 24). Notwithstanding Defendant's attempt to characterize Plaintiff's position merely as denying "some of the details of what was said," Plaintiff's declaration makes clear that she disputes the material facts that Defendant cites as the basis for firing her. *See Allen v. Bd. of*

*Pub. Educ*., 495 F.3d 1306, 1315 (11th Cir. 2007) ("If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment.") "Put simply, if the resolution of a material fact or the inference to be drawn therefrom presents a 'he said, she said' scenario, and if the record has evidence genuinely supporting both sides of the story, then summary judgment is not appropriate." *Lambert v. Herrington*, No. 1:19-00854-KD-B, 2021 U.S. Dist. LEXIS 29778, at *33 (S.D. Ala. Jan. 22, 2021).

As the district court recognized, a "he said, she said" scenario is clearly presented from Plaintiff's and O'Neal's diametrically opposed and conflicting testimony regarding the events preceding her termination. As set forth in Paragraph 3 of her declaration, Plaintiff "did not interrupt O'Neal and … did not keep interrupting him," "did not <u>not</u> let him finish," "did not refuse to be quiet," and was not "insubordinate or disrespectful in this meeting." (Doc. 17-2 at 2). In a respectful tone, Plaintiff simply told O'Neal that it was "unfair that we had been working these late hours and long weeks," and "We're all tired." (Doc. 15-1, 74:5-7, 84:6-19). Plaintiff's declaration further states:

> I am aware that Derrick O'Neal gave the following testimony:
>
> "We got right there where the time clock was at. I said, 'Go ahead and clock out.' And she called me stupid on several occasions. I said, 'Teresa, you call me stupid again,

I'm going to be forced to terminate you because now you're really crossing the line.' And she said, 'You are stupid, and this place is going to shit.' I said, 'So now you just fired yourself because I asked you not to do that especially out here on the floor in front of people.'"

This testimony is false. I testified about what really happened in my deposition. I completely dispute Derrick O'Neal's account of what he claims I said and did before he terminated me. I did not use the word "stupid" before he told me I was fired.

(Doc. 17-2 at 2-3). Plaintiff wholly disputes O'Neal's account, and instead testified that she said, "That's stupid" only once, only <u>after</u> O'Neal had already told her that she was fired, and only <u>after</u> he had already made the false report over the radio that she was being "irate." (Doc. 15-1, 92:10-16, 101:15-102:4). Plaintiff testified, "I wasn't doing anything. I was just standing there. And when he got on there and said I was being irate, then I said that was stupid to call and say something that I wasn't doing." (Doc. 15-1, 93:9-17; 95:4-96:5, 102:3-10). Based on Plaintiff's declaration and testimony, the trial court was correct in observing that under the Plaintiff's version of the facts "O'Neal fired Phillips unprovoked, not because Phillips called O'Neal stupid or questioned his management decisions" and that she had therefore established "pretext of something." However, the trial court erred in concluding that Plaintiff had not established pretext of race discrimination. Contrary to the Defendant's arguments, Plaintiff's comparator evidence (discussed in Section C of this brief) allows a reasonable jury to conclude that race discrimination was the "real

reason" O'Neal decided to fire Plaintiff "unprovoked," while Craig and Stockdale, who also spoke up and were loud and "cussing," and using words such as "hell and damn and the 'f' word," received no discipline whatsoever. (Doc. 29 at 12, 15).

## C. Comparator Evidence Is Evidence of Discriminatory Intent.

Defendant argues that Plaintiff has produced no evidence of discriminatory intent allowing a jury to conclude that race discrimination was the "real reason" she was terminated. But, as Plaintiff argued in her opening brief, comparator evidence is evidence of discrimination and from which an inference of discriminatory intent may be drawn. See, e.g., *Lewis v. City of Union City*, 918 F.3d 1213, 1222 (11th Cir. 2019) ("So what exactly is this 'discrimination,' an inference of which is the object of the plaintiff's prima facie case? As we have said many times—and as all of us know intuitively—'[d]iscrimination consists of treating like cases differently.'") Defendant implicitly concedes that comparator evidence is circumstantial evidence of discriminatory intent by arguing that "[t]he only proposed evidence that Phillips presented of race discrimination was her comparator evidence, and that evidence is insufficient." (Def.'s Brief at 36). However, Defendant is incorrect, as the trial court correctly found that Plaintiff's comparators were similarly situated. Plaintiff's comparator evidence therefore provides the "missing link" allowing an inference that discrimination was the "real reason" for Plaintiff's termination: "it is only by demonstrating that her employer has treated 'like' employees 'differently'—i.e.,

through an assessment of comparators—that a plaintiff can supply the missing link and provide a valid basis for inferring unlawful discrimination." *Id.* at 1223.

Faced with the reality that differential treatment of comparators is the essence of discrimination, Defendant attempts to distinguish Plaintiff's comparators by arguing that "the events that resulted in Phillips's termination occurred after Craig and Stockdale's comments in the huddle and under different circumstances" and that "Plaintiff was not terminated from employment until after she was taken to the office by O'Neal and Hanna, suspended, and then continued to make disrespectful and insubordinate comments to O'Neal." (Def.'s Brief at 36). Defendant's argument overlooks the key point: even though Plaintiff, Craig, and Stockdale all spoke up in the meeting, and Stockdale and Craig were loud and "cussing," using words such as "hell and damn and the 'f' word," (Doc. 15-1, 82:19-83:7), Plaintiff was the one O'Neal summoned to his office and then fired, while Craig and Stockdale received no discipline. Plaintiff is white; Craig and Stockdale, like O'Neal, are African-American. Under Plaintiff's version of the facts, O'Neal summoned her to his office and fired her not, as Defendant argues, because she allegedly "continued to make disrespectful and insubordinate comments to O'Neal." (Def.'s Brief at 46). Rather, he fired her simply for speaking up in the meeting. This is in accordance with the trial court's observation that under the Plaintiff's version of the facts "O'Neal fired Phillips unprovoked, not because Phillips called O'Neal stupid or questioned his

management decisions." (Doc. 29 at 12). Again, accepting Defendant's arguments would require resolving disputed facts and construing them against the Plaintiff.

Defendant takes issue with the fact that Plaintiff has too many comparators: twelve, in addition to Stockdale and Craig. However, instead of rebutting that evidence, Defendant merely argues that O'Neal disciplined some African American employees. However, to the extent some of the comparators may be distinguishable, even though Defendant makes little effort to distinguish them, the sheer number of comparators identified by Plaintiff reinforces the inference of discrimination. See, e.g., *Jenkins v. Nell*, No. 20-13869, 2022 U.S. App. LEXIS 5752, at *14 (11th Cir. Mar. 3, 2022) (reasoning that "[a]lthough Jones was not a strict comparator, the evidence that he threatened his supervisor, a Rule A-6 violation, and did not incur any additional warnings or discussion about his comments is relevant"); *Lewis v. City of Union City*, 934 F.3d 1169, 1187 (11th Cir. 2019) ("accepting, as we must, that Officer Heard and Sergeant McClure do not meet this Circuit's strict definition of similarly situated comparators, the evidence of their treatment in the face of physical limitations on their ability to perform as police officers is not irrelevant.") Moreover, this is a termination case, not a discipline case; accordingly, evidence that O'Neal gave African American employees lesser discipline short of termination does not, as Defendant contends, show a record of "indiscriminate conduct." (Def.'s Brief at 48). This is because although O'Neal may have disciplined African American

16

employees on other occasions, he entirely failed to discipline Stockdale and Craig while terminating Plaintiff's employment, treating her more severely than the two comparators from the meeting and also treating her more severely than African American employees whom he disciplined but did not terminate on other occasions.

Further, Defendant makes no attempt to defend the district court's reliance on Pate and Tarwater, the two white individuals whom O'Neal disciplined but did not fire under different circumstances from those presented here. Defendant's failure to defend the district court's chief justification for granting summary judgment emphasizes that the district court erred in relying on these alleged white comparators to grant summary judgment and that its order to that effect should be reversed.

### D. **That Plaintiff Included Age Discrimination on Her EEOC Charge is Irrelevant to Disposition of her Race Discrimination Claim.**

Defendant argues on page 39 of its brief that because Plaintiff testified that she believed she was a victim of age discrimination, this somehow dooms her race discrimination claim, arguing that "but for" causation precludes her from holding such a belief while pursuing her claims for race discrimination under Section 1981. However, Defendant cites no authority that Plaintiff's personal "belief" regarding age discrimination is relevant. In fact, she asserts no age discrimination claim in this action. Moreover, even if she had asserted a claim of age discrimination, pleading alternate theories of "but for" causation would not doom her Section 1981 claim, as the Federal Rules of Civil Procedure state that "[a] party may set out 2 or more

17

statements of a claim alternatively or hypothetically" and "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d). Moreover, Defendant's argument wrongly construes *Comcast Corp. v. Nat'l Ass'n of Africam American-Owned Media* as requiring plaintiffs to show "sole causation" for §1981 discrimination claims. 140 S. Ct. 1009 (2020).

Because *Comcast* was not an employment case, the Court should construe it in light of *Bostock v. Clayton County*, where Justice Gorsuch (the author of both opinions) extensively discussed the effect of "but for" causation in employment discrimination cases, reasoning that "because nothing in our analysis depends on the motivating factor test, we focus on the more traditional but for causation standard that continues to afford a viable, if no longer exclusive, path to relief under Title VII." *Id.* As set forth in *Bostock*, decided less than three months after *Comcast*, a plaintiff may state a claim under "but for" causation even if both legitimate and non-legitimate considerations motivated an employment action: "the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's [protected characteristic] was one but-for cause of that decision, that is enough to trigger the law." 140 S. Ct. 1731, 1740 (2020) (cites omitted). *Comcast* merely confirmed that 42 USC §1981 belongs to the broad class

of statutes, soon to be extensively referenced and discussed by Justice Gorsuch in *Bostock*, for which "traditional but-for causation" applies. 140 S. Ct. 1009 (2020).

The *Bostock* majority took pains to distinguish but-for causation from sole causation, reasoning that the former "can be a sweeping standard" because "[o]ften, events have multiple but-for causes." *Id.* at 1739. Congress, the Court said, "could have added 'solely' to indicate that actions taken 'because of' multiple factors do not violate the law," but "if anything, has moved in the opposite direction..." *Id.* The Court reiterated even more strongly that "the plaintiff's [protected characteristic] need not be the sole or primary cause of the employer's adverse action" so long as "but for" causation is satisfied. *Id.* at 1744. "But for" causation may be satisfied even "if another factor ... might also be at work, or even play[ed] a more important role in the employer's decision." *Id.*

*Bostock's* analysis of "but for causation" in employment discrimination cases is fully applicable to cases brought under 42 USC Section 1981. *Id.* at 1739. The reasoning of *Bostock* and *Comcast* is strikingly similar: like his majority opinion in *Bostock*, Justice Gorsuch's majority opinion in *Comcast* began by addressing the "traditional but-for causation standard." *Bostock*, 140 S. Ct. at 1740; *Comcast Corp.*, 140 S. Ct. 1009, 1014 (2020). As in *Bostock*, where Justice Gorsuch began by citing *University of Tex. Southwestern Medical Center v. Nassar*, 570 U. S. 338, 347 (2013) and *Gross v. FBL Financial Services, Inc.*, 557 U. S. 167, 176-177 (2009),

his opinion in *Comcast* also cites *Nassar* and *Gross* for the proposition that "[i]t is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." 140 S. Ct. at 1014 (citing *Nassar*, *Gross*). Just as in *Bostock*, *Comcast* makes clear that a plaintiff alleging "but for" causation need not prove "sole" causation: rather, under §1981, "a plaintiff bears the burden of showing that race was a but-for cause of its injury," i.e. that "but for race, [she] would not have suffered the loss of a legally protected right." *Id.* at 1019.

Based on this authority, Defendant's argument that Plaintiff cannot prove her claim for wrongful termination in violation of 42 USC § 1981 because she believes that age may also have played a role in her termination is simply wrong. On the contrary, the Supreme Court has made clear that "but for" causation "can be a sweeping standard" because "[o]ften, events have multiple but-for causes." *Bostock*, 140 S. Ct. at 1739. Read coherently, *Bostock* and *Comcast* make clear that 42 USC §1981 incorporates the same "traditional but-for causation standard" that Judge Gorsuch more fully elucidated for the employment discrimination context in *Bostock*, meaning that an employer "cannot avoid liability just by citing some other factor that contributed to its challenged employment decision," and that a Plaintiff may prevail even "if another factor ... might also be at work, or even play[ed] a more important role in the employer's decision." *Bostock*, 140 S. Ct. at 1744. "So long as

the plaintiff's [protected characteristic] was one but-for cause of that decision, that is enough to trigger the law." *Id.* Accordingly, the Court should reject this argument.

### E. Plaintiff Does Not Rely Solely on Her Prima Facie Case, and *Flowers*, Where the Plaintiff Had No Admissible Comparator Evidence, is Not Controlling.

Setting up a straw man, Defendant argues that Plaintiff seeks to "survive" summary judgment "solely based on her prima facie case." (Def.'s Brief at 39). This is untrue. Contrary to Defendant's argument that Plaintiff relies "solely" on a prima facie case of discrimination, a reasonable jury could infer pretext not merely because O'Neal treated Plaintiff less favorably than he treated Stockdale and Craig, but also because accepting the Plaintiff's version of the facts, a reasonable jury must necessarily conclude O'Neal is lying about the reasons he fired her. Although the trial court erred in failing to conclude that O'Neal's more favorable treatment of Stockdale and Craig means that a jury could find that O'Neal was lying to cover up race discrimination, the trial court was correct insofar as it correctly recognized that Defendant's articulated reason for terminating Plaintiff rests on a swearing match between Plaintiff and O'Neal that may not be resolved by a court. (Doc. 29 at 7-8).

Defendant's reliance on *Flowers v. Troup County* is misplaced. As made clear by the district court's opinion in *Flowers*, the plaintiff in that case had established a prima facie case "without providing a similarly situated comparator." *Flowers v. Troup Cty.*, 1 F. Supp. 3d 1363, 1371, 1382 fn8 (N.D. Ga. 2014). Instead, the

plaintiff had established a prima facie case by showing that "he was replaced by a Caucasian." *Id.* at 1382 fn8. As observed by the Court of Appeals, other than the race of the replacement, "[t]he only evidence that Flowers offers that even touches on his race is the fact that he became the first black head football coach in Troup County since 1973." *Flowers v. Troup Cty.*, 803 F.3d 1327, 1338 (11th Cir. 2015).

The passage from *Flowers* on which Defendant relies on page 40 of its brief must be interpreted by the context of its holding: *Flowers* stands for the proposition that when a plaintiff identifies no comparator, but instead establishes a prima facie case merely by showing he was replaced by someone outside the protected class, he must, after "contradicting the employer's stated reasons," produce "additional evidence suggesting discrimination" such as comparator evidence. 803 F.3d at 1339.

This Court's analysis of the plaintiff's proffered comparators in *Flowers* makes clear that valid comparator evidence would have satisfied the "additional evidence" requirement; indeed, other panels of this Court have interpreted *Flowers* as standing for the proposition "that a plaintiff may provide evidence of pretext via comparators 'whose more-favorable treatment could support a reasonable jury's inference that the [defendant's] decision to fire [the plaintiff] was pretext for race discrimination.'" *Lee v. Safe-Dry Carpet & Upholstery*, No. 20-14275, 2021 U.S. App. LEXIS 25957, at *11 (11th Cir. Aug. 27, 2021) (alterations in original). The plaintiff in *Flowers* lost not because he failed to produce some undefined "additional

evidence" on top of admissible comparator evidence, but because the Court found

that his proposed comparators did not engage in similar alleged misconduct:

> The District Court identified three ways in which Flowers's and his comparators' alleged recruiting violations differed—the magnitude of any "monetary value," the likelihood of success of recruiting ineligible players, and "the risk of detection"—and noted that "Flowers's alleged misconduct could likely be distinguished in other ways as well." We agree. The most salient difference not discussed by the District Court is the intensity and frequency of the recruiting allegations leveled against Flowers. Starting mere days after Flowers was first hired, Troup County School District officials received, over a period of roughly six months, seven letters from Lanett, Alabama school administrators questioning eight students' eligibility to play for Troup High School. Flowers, in turn, points to the statements of the principal of Troup High School and two Troup High School students and football players, one of whom was Flowers's nephew, alerting Troup County officials to potential recruiting violations committed by Branch and Wiggins—all of which were made only after the investigation into Flowers had begun. The obvious differences between Flowers's circumstances and those of his purported comparators are hardly the stuff of an apples-to-apples comparison.

*Id.* at 1340. Here, by contrast, Plaintiff has produced evidence of race discrimination

in that at least two employees, Craig and Stockdale, were insubordinate and cursing

in the same meeting where Plaintiff spoke up but received no discipline whatsoever.

More broadly, section IV of Defendant's brief follows the tactic of ignoring

most of Plaintiff's evidence and proceeding as if Plaintiff had only established a

prima facie case without showing pretext. To this end, Defendant cites authority to

the effect that a Plaintiff "is not permitted to rest on her prima facie case laurels"

without producing evidence of pretext. (Def.'s Brief at 40-41, citing *Muniz v. Dynamic Sys.*, No. CV 117-074, 2019 WL 4439816 (S. D. Ga. 2019)). Here, Plaintiff is not "resting" on her prima facie case "laurels"; rather, in addition to identifying two employees, Craig and Stockdale, who were insubordinate and cursing in the very same meeting where Plaintiff spoke up but received no discipline whatsoever, she has also given testimony that, if accepted by the jury, establishes that O'Neal is lying about his reasons for firing her. She has additionally produced evidence of numerous other comparators. Defendant similarly cites a former Fifth Circuit case for the proposition that "plaintiff's mere restatement of evidence from prima facie case [is] insufficient to show pretext." (Def.'s Brief at 40, citing *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981)). But again, Plaintiff does not just "restate" her prima facie argument at the pretext stage. Rather, she also produced evidence establishing that O'Neal is lying about his articulated reason for firing her.

Defendant's reliance on *Willis v. Koch Agronomic Servcs.*, an unpublished case, is similarly not on point. (See Def.'s Brief at 40 (citing 846 Fed. Appx. 787, 797, n.11 (11th Cir. 2021)). In *Willis*, the Eleventh Circuit found that the plaintiff had failed to identify a similarly situated comparator: "Willis and Ogle had critically different leadership responsibilities, such that any variance in treatment between Ogle and Willis is not probative of whether Koch's stated reason  for terminating Willis due to a lack of leadership as plant manager was pretext for racial

discrimination." *Id.* at 797-98. Here, by contrast, Plaintiff has identified numerous comparators, including two who spoke up in the same meeting in which she spoke up. The Eleventh Circuit further held that the plaintiff in *Willis* had failed to produce evidence rebutting the defendant's articulated reason for firing him: "In conclusion, Koch asserted that it terminated Willis's employment due to leadership issues and articulated specific factual instances that supported Koch's concerns. While Willis has questioned the wisdom or correctness of Koch's termination decision, he did not present sufficient evidence to raise a jury issue as to whether Koch's legitimate, nondiscriminatory reason is pretextual." *Id.* at 798. Given the double failure of the plaintiff to identify a similarly situated comparator or to establish pretext, *Willis* is neither controlling nor persuasive here, where Plaintiff has produced such evidence.

Similarly, the unpublished case of *Siddiqui v. NetJets Aviation, Inc.* is also neither persuasive nor controlling. *See Siddiqui v. NetJets Aviation, Inc.*, 773 F. App'x 562, 565 (11th Cir. 2019). In *Siddiqui*, the Court of Appeals noted that the plaintiff "has not provided any evidence to support a finding that NetJets's proffered reason for firing him was false." *Id.* at 565. Here, by contrast, the swearing match between Plaintiff and O'Neal allows a reasonable jury to conclude O'Neal is lying about his reasons for terminating her. Further, citing authority that "differences in treatment by different . . . decision makers can seldom be the basis for a viable claim of discrimination," the *Siddiqi* panel observed that "to the extent that Siddiqui relies

on his comparator evidence to provide an inference of discrimination, Noe was not the decisionmaker in any of the suspensions of Siddiqui's proffered comparators." *Id*. at 565 (citing *Silvera v. Orange Cty. Sch. Bd*., 244 F.3d 1253, 1263 n5 (11th Cir. 2001)). Here, by contrast, O'Neal was the sole decisionmaker on the decision to summon Plaintiff to his office and then fire her while ignoring the conduct of two comparators, Craig and Stockdale, who were insubordinate and cursing in the very same meeting but received no discipline whatsoever. Because O'Neal was the decisionmaker for both employment decisions, his lenient treatment of Craig and Stockdale compared with his termination of Plaintiff allows an inference of discriminatory intent. See *Lewis I*, 918 F.3d at ("Ordinarily, for instance, a similarly situated comparator … will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff…") Given these differences in both comparator evidence and pretext, *Siddiqui* is neither persuasive nor controlling.

Defendant also cites *Lee v. Safe-Dry Carpet & Upholstery*, discussed above for its treatment of *Flowers*. In *Lee*, the Plaintiff had not established a prima facie case, but the defendant waived any prima facie challenge and instead focused its summary judgment arguments on pretext. *Lee v. Safe-Dry Carpet & Upholstery*, No. 2:19-cv-00661-ACA, 2020 U.S. Dist. LEXIS 189837, at *7 (N.D. Ala. Oct. 14, 2020). The Eleventh Circuit, analyzing the evidence, reasoned that the plaintiff in *Lee* had neither produced evidence of a similarly situated comparator, nor evidence

that the employer's articulated reasons for his termination were false. *See* 2021 U.S. App. LEXIS 25957, at *12-14. Here, by contrast, the district court correctly determined that Plaintiff "was similarly situated to Stockdale and [Craig]" and that Plaintiff had established that Defendant's articulated reasons were pretext. (Doc. 29 at 8, 13). Accordingly, *Lee* is distinguishable. Further, the *Lee* panel's reading of *Flowers* emphasizes that comparator evidence such as Plaintiff produced here would satisfy *Flowers*'s "additional evidence suggesting discrimination" requirement.

Based on the above, the Court should reject Defendant's arguments and reverse the trial court's judgment.

### F. <u>The Trial Court Erred in Granting Summary Judgment on Plaintiff's "Mixed Motive" Theory of Relief.</u>

Because a reasonable jury could find for Plaintiff under a "pretext" theory, the jury necessarily could also find that Plaintiff's race was "'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Quigg v. Thomas Cnty. Sch. Dist*, 814 F.3d 1227, 1235 (11th Cir. 2016); 42 U.S.C. § 2000e—2(m). Defendant is correct that Plaintiff maintains she was not disrespectful, that she did not interrupt O'Neal, and that she did not refuse to stop speaking. (Doc. 17-2 ¶¶ 2-3). However, Plaintiff has never disputed that she (along with two of her African American coworkers) voiced dissent in the meeting where O'Neal informed employees that they would be required to work on Sunday. In a respectful tone, Plaintiff simply told O'Neal that it was "unfair that we had been

working these late hours and long weeks," and "We're all tired." (Doc. 15-1, 74:5-7, 84:6-19). This is therefore not a classic "single motive" case like *Smith v. Vestavia Hills Bd. Of Educ.*, 791 Fed. Appx. 127, 130 (11th Cir. 2019). Rather, Plaintiff spoke in the meeting and her comments appeared to trigger O'Neal to terminate her employment, suggesting, unlike the Plaintiff in *Smith*, that "unlawful bias, in addition to other factors" – here, Plaintiff's voicing of dissent regarding the decision to work over the weekend – "motivated the adverse actions." 791 F. App'x at 131.

In sum, a reasonable jury could conclude that O'Neal became angry with Plaintiff for speaking up in the meeting and decided to terminate her for voicing dissent, perhaps to make an example of her in the face of mass dissent over the unpopular decision to work on Sunday.[1] Given the Eleventh Circuit's jurisprudence, a reasonable jury conceivably could conclude that such a reason would potentially be a "legitimate motive" for Plaintiff's termination, in the absence of other evidence. However, given also that O'Neal did not similarly terminate the two African

---

[1] O'Neal immediately "started blowing up" after Plaintiff spoke. (Doc. 15-1, 84:20-23). Shane Hanna's statement confirms that after Plaintiff spoke, O'Neal "told her that Alabama was a right to work state and he could set whatever hours he wanted to, to get the job done. And he said he could fire her on the spot." (Doc. 15-3, pp. 39-40; Doc. 15-3, 74:6-15). 1.   O'Neal then sent Plaintiff's coworkers home but told Plaintiff to come to the office. (Doc. 15-1, 85:4-86:3). In the office, with Shane Hanna present, O'Neal told Plaintiff that she was suspended and that on Monday HR would decide what to do with her; O'Neal's response when Plaintiff asked why she was suspended was, "We're through here." (Doc. 15-1, 90:3-18, 91:5-9; 91:10-13).

American employees who also spoke up in the meeting, a reasonable jury might additionally conclude that Plaintiff's white race was also a motivating or "but for" factor in that decision. This is therefore a "mixed motive" case because a reasonable jury could conclude that both a "legitimate" motive to make an example of Plaintiff for voicing dissent and an illegitimate motive of race discrimination were at work in O'Neal's decision, causing him to single out Plaintiff for termination even though Plaintiff's African American coworkers Stockdale and Craig similarly spoke up.

Further, this "mixed motive" theory of discrimination is entirely compatible with Plaintiff's arguments regarding the *McDonnell Douglas* framework. A reasonable jury could potentially conclude that having made a decision tainted by race discrimination, O'Neal, with additional time to reflect on his actions, then proceeded to concoct a pretextual explanation for that decision in an attempt to conceal that Plaintiff's white race was a motivating factor, inventing a story about Plaintiff being disrespectful and "irate" (conduct Plaintiff denies) to justify treating her less favorably than Stockdale and Craig by making her conduct appear more culpable than that of her African American coworkers who also spoke up to voice dissent in the meeting.[2] The inference of pretext thus reinforces that Plaintiff's white

---

[2] After Plaintiff, O'Neal, and Hanna left the office, Hanna then walked off in a different direction; when it was just Plaintiff and O'Neal in the doorway, O'Neal "turned around real quick and got in my face, it scared me." (Doc. 15-1, 90:19-91:4; 103:14-20). O'Neal told Plaintiff that she was fired (rather than just suspended) and "not to sign up for unemployment and don't try to get another job

race was one motivating factor in the decision to terminate Plaintiff, even if O'Neal also had another motive of making an example of Plaintiff for voicing dissent.

Based on the above analysis, the cases Defendant cites are not on point, as a reasonable jury could find that O'Neal fired Plaintiff for speaking up in the meeting, suggesting that both legitimate and illegitimate motives were at play in his decision. Applying the "mixed motive" framework in this case does not implicate the specter raised in *Stevenson v. City of Sunrise* of turning "every Title VII claim into a mixed-motive case" because Plaintiff herself has pleaded and testified that her termination was triggered by her speaking up in the meeting. *Cf. Stevenson v. City of Sunrise*, No. 20-12530, 2021 U.S. App. LEXIS 30858, at *19 (11th Cir. Oct. 15, 2021).

Again, Defendant's only answer to this theory of liability is to assert that Plaintiff's comparators are not similarly situated and to attempt to persuade the court to disregard the summary judgment standard and construe disputed facts in its favor. However, as discussed above, where Plaintiff's testimony conflicts with that of O'Neal and Hanna, the Court must "accept the Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d

---

at a cabinet place because he would make sure I didn't get it." (Doc. 15-1, 90:11-18; 100:21-101:411). O'Neal then called someone on his two-way radio and falsely told that person that Plaintiff was being "irate" and that he needed "backup." (Doc. 15-1, 90:19-91:4; 92:13-14).). However, Plaintiff "wasn't doing anything but standing there." (Doc. 15-1, 95:6-10). She was not being "irate." (Doc. 15-1, 103:3-13).

1325, 1330 (11th Cir. 2008). See also *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (holding that "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version.") The other 12 comparators discussed by Plaintiff in her opposition brief further reinforce the inference that Plaintiff's race was a motivating factor. See, e.g., *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1343 (11th Cir. 2011) (reasoning that "the great discrepancies in the punishments received by the white non-supervisors in these cases, in contrast to their black peers, yields a reasonable inference that, in the summer of 2005, Heiserman intentionally discriminated against them because they are white.") Accordingly, the Court should reverse the judgment and allow the mixed motive claim to proceed.

## **<u>Conclusion</u>**

Based on the above authorities and arguments, the trial court's order granting summary judgment should be reversed, and this case should be remanded for a jury trial.

Respectfully submitted,

*<u>/s/ L. William Smith</u>*

Jon C. Goldfarb
L. William Smith
Counsel for Plaintiff

## <u>Certificate Of Compliance</u>

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. (32)(a)(7)(B). This brief contains 5,907 words according to the word-count function of the word-processing system used to prepare the brief.


<u>/s/ L. William Smith</u>
Attorney for Plaintiff-Appellant

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing document (corrected in this filing to include exact word count) was served via the Eleventh Circuit's electronic filing system to all counsel of record on March 25th, 2022.


        <u>/s/ L. William Smith</u>
        OF COUNSEL